# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RANDALL J. WILCOX,            )
                              )
    Plaintiff,            )
                              )
v.                            )   Case No. 04-1187-WEB
                              )
JO ANNE B. BARNHART,          )
Commissioner of the           )
Social Security Administration )
                              )
    Defendant.            )

## MEMORANDUM AND ORDER

Plaintiff seeks judicial review of the Defendant's decision to deny disability insurance benefits under Title II Social Security Disability and Title XVI Supplemental Security Income Benefits. See 42 U.S. C. § § 1381 et seq. A review of the record reveals that Plaintiff filed for these benefits on April 11, 2002 reporting an inability to work since September 6, 2000. (R. at 21). A hearing was held in front of administrative law judge (ALJ) Bock on November 25, 2003. (Id.). At the time of the hearing Plaintiff was 50 years old. (Id. at 22). The ALJ followed the five-step sequential analysis found at 20 C.F.R. § 404.1520. (Id. at 22-29).

The ALJ found that Plaintiff has not engaged in substantial gainful activity (SGA) since February 16, 2002. (Id. at 22). According to the ALJ, the medical evidence established that Plaintiff has medically determinable severe impairments of insulin-dependent diabetes mellitus and abuse of Xanax, alcohol, cannabis, and tranquilizers. (Id. at 25). Next he found that Plaintiff's severe impairments did not meet or exceed the criteria for any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.

at 26). The ALJ determined Plaintiff's residual functional capacity (RFC) and found that Plaintiff's impairments precluded him from doing past work. (Id. at 27-28). A Vocational Expert (VE) testified that Plaintiff's RFC allowed for light and sedentary work and there are substantial numbers of those jobs in the national economy. (Id. at 29). A decision denying Plaintiff benefits was issued on January 9, 2004. (Id. at 31). Plaintiff requested review by the Social Security Appeals Council, which was denied on May 17, 2004, making the decision of the ALJ the final Agency decision. (Id. at 7); 20 C.F.R. § 404.981.

Plaintiff argues first that the ALJ erred because he improperly failed to give controlling weight to Dr. Schell's medical opinions. Second, the ALJ failed to properly analyze Plaintiff's failure to follow prescribed treatment. Third, the ALJ erred when he found that Plaintiff's mental impairments were non-severe. Fourth, the ALJ erred when he calculated an residual functional capacity (RFC) that did not account for Plaintiff's mental impairments. Finally, the ALJ erred by failing to properly question the VE about Plaintiff's impairments.

### I.  Standard

The Court must affirm the Commissioner's final decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2002). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) quoting *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias v. Secretary of HHS,* 933 F.2d 799, 800 (10th Cir. 1991) quoting *Richardson v. Perales*, 402 U.S. 389,

401 (1971). Our role is not to reweigh the evidence or substitute our judgment for that of the Commissioner. *White*, 287 F.3d at 905. The Commissioner's decision is not subject to such deference and reversal may be appropriate if the Commissioner applied an incorrect legal standard. *Casias*, 933 F.2d at 801.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in SGA. 42 U.S.C. § 423(d)(1)(A). The claimant's physical or mental impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of SGA which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. 20 C.F.R § 404.1520(a)(4). At step one, the agency will find non-disability if claimant is engaged in SGA. 20 C.F.R § 404.1520(a)(4)(i). At step two, the claimant must show a severe disability. 20 C.F.R § 404.1520(a)(4)(ii). A severe disability is defined as an impairment which significantly limits a claimant's physical or mental ability to do basic work activity. 20 C.F.R § 404.1520(c). At step three, the agency determines whether the severe impairment meets or equals the impairments and the duration requirements in Appendix 1 of 20 C.F.R. and if it does, the claimant will be found disabled. 20 C.F.R § 404.1520(a)(4)(iii). If the impairment does not meet the standards in step three, the agency continues to step four and assesses whether the claimant can do her previous work and if so, then she will not be

disabled. 20 C.F.R § 404.1520(a)(4)(iv). At step five, the agency considers a claimant's RFC, age, education and past work experience to determine if claimant is capable of performing other work in the national economy. 20 C.F.R § 404.1520(a)(4)(v).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the agency. *Id.* Before going from step three to step four, the agency must assess the claimant's RFC. 20 C.F.R § 404.1520(a)(4).

## II. Treating Physician's Opinions

Plaintiff argues that the ALJ improperly evaluated the opinions of Plaintiff's treating physician, Dr. Schell. Specifically, Plaintiff claims that the ALJ improperly made his own medical judgments about Plaintiff and that the ALJ failed to use the appropriate factors when deciding how much weight to give Dr. Schell's opinion.

"An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors." *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004). Plaintiff refers to the ALJ's statement that, "[Dr. Schell] also saw the claimant functioning at a GAF of 35, indicating that the claimant was all but in a vegetative state."[1] (R. at 28). This statement taken out of context may seem cavalier; however, when viewed in light of the overall paragraph, it merely reinforces the ALJ's judgment that Dr. Schell's analysis is speculative and not supported by the evidence. Therefore, this is not an example of the

---

[1] Global Assessment Function - is a test on a 100 point scale rating the psychological and social functioning of adults. Diagnostic and Statistical Manual of Mental Disorders (DSM) IV 814-816 (4th ed. 2000).

4

ALJ giving a medical opinion.

Plaintiff next argues that the ALJ failed to use the factors listed in *Goatcher* when evaluating Dr. Schell's opinion. *Goatcher v. Department of Health and Human Services*, 52 F3d 288, 290 (10th Cir. 1995); 20 C.F.R. § 404.1527(d). The first step in evaluating a treating physician's opinion is to determine whether to give it controlling weight. If a treating physician's medical opinion is well - supported by medically acceptable techniques and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight and be adopted. S.S.R. 96-2p; 20 C.F.R. § 404.1527(d)(2); *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004).

The ALJ found that Dr. Schell's medical opinion was not entitled to controlling weight because it was not supported by the record as a whole and the diagnosis was supported by Plaintiff's subjective complaints instead of objective tests. However, even if the treating source's opinion is not entitled to controlling weight it still may be entitled to deference. S.S.R. 96-2p; *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). If controlling weight is not to be afforded a treating physician's opinion, it must be weighed using the factors in *Goatcher* and 404.1527. These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Goatcher,* 52 F.3d 290; 20 C.F.R. § 404.1527(d).

The ALJ considered the first factor early in the decision when he wrote four paragraphs about Dr. Schell's appointments with Plaintiff. (R. at 23-24). In those same paragraphs, the ALJ satisfied the second factor by discussing the intelligence test given to Plaintiff and the two Mental Medical Source Statements filled out

5

by Dr. Schell. (Id.). Additionally, the ALJ discussed that Dr. Schell had not recommended any psychiatric treatment or pharmacological therapy. (Id. at 28). The third and fourth factors were satisfied when the ALJ stated specifically "Dr. Schell's opinions are not supported by the record as a whole, they cannot be given controlling weight." (Id.). The ALJ supported this by describing the speculative nature of Dr. Schell's opinions, the non severe nature of Plaintiff's mental impairments as stated by the consultative doctors, the high degree of activity as reflected in Plaintiff's daily activities, and finding that Plaintiff's statements about his limitations were only partly credible. (Id. at 25, 26, 28). The ALJ does not specifically state that Dr. Schell is an expert in the area but does acknowledge his credentials. (Id. at 23). The ALJ also relied on other factors such as Dr. Schell's reliance on Plaintiff's subjective complaints. (Id. at 28).

A treating physician's opinion may be rejected if the Agency gives specific and legitimate reasons for doing so. *Hargis v. Sullivan*, 945 F.2d 1482. 1489-1490 (10th Cir. 1991); see also S.S.R. 96-2p ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinions..."). The ALJ applied the correct legal standard by applying the *Goatcher* factors and giving a number of well supported reasons for rejecting the opinion of Dr. Schell.

### III.  ALJ's evaluation of Plaintiff's Failure to Follow Treatment

The ALJ found Plaintiff to be partially credible in part based on Plaintiff's failure to follow the prescribed treatment to get exercise and stay active. (R. at 27). Plaintiff argues that the ALJ erred by failing to follow S.S.R. 82-59 when evaluating Plaintiff's failure to follow prescribed treatment to determine his credibility. The Tenth Circuit uses substantially the same test as that listed in S.S.R. 82-59. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987); see also 20 C.F.R. § 404.1530(b). "[B]efore the ALJ may

6

rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse.'" *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993) quoting *Frey,* 816 F.2d at 517.

The ALJ satisfied the first factor in the *Frey* test by stating, "the claimant's noncompliance accounts for many of his problems, and there is no doubt the claimant's impairments could be drastically lessened if he exercised more and quit abusing substances." (R. at 27). The ALJ also states that the medical notes prescribe exercise and staying active. (Id.). The ALJ satisfied the third factor in the *Frey* test by stating that claimant has not complied with the treatment because "the claimant testified to barely leaving the house, still smoking marijuana a couple of times a week, still drinking beer on weekend, and still abusing tranquilizers." (Id.).

However, the ALJ does not account for the fourth factor. This is error because Plaintiff stated in his testimony that he has pain and fatigue when he exercises from taking certain prescription medication. (Id. at 106, 553). On remand the ALJ shall apply all four factors of the *Frey* test and if necessary re-determine Plaintiff's credibility. The Agency is reminded that the Court's decision does not dictate a particular result. "Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

## IV. Alleged Error at Step Two

At step two, the ALJ must apply a de minimus standard to determine whether an impairment

significantly limits the claimant's ability to do basic work activity. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997); 20 C.F.R. § 404.1520(c). Basic work activity means the abilities and aptitudes to do most jobs. 20 C.F.R. § 404.1521(b). Examples of basic work activity include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." Id. "A determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms)...". SSR 96-3p.

Plaintiff argues that the ALJ erred at step two by deciding that the mental impairments were not severe. Plaintiff supports his claim by stating that Dr. Schell treated Plaintiff at length for two years and his diagnosis supports a finding that the mental impairments are severe. As discussed earlier, the ALJ found that Dr. Schell's opinion was not supported by the record and did not accord his opinion substantial weight. (R. at 25).

Plaintiff next argues that his testimony supports a finding that the mental impairments were severe. Plaintiff testified that he has poor social skills, has difficulty concentrating, is depressed, has fatigue and anxiety. (Id. at 551, 552, 556, 557). The ALJ did rely on Plaintiff's testimony to conclude that Plaintiff's mental impairments are not severe. The ALJ stated that "the claimant testified that only his blood pressure and not his mental problems interfered with his ability to work". (Id. at 25). This is supported by the record as Plaintiff testified to having been afflicted by social problems, anxiety, depression and Asperger's

8

disorder since early childhood yet he continued to work despite his mental impairments until 2002.[2] (Id. at 22, 544, 558-559). Plaintiff's testimony supports the ALJ's finding of non-severity. See S.S.R. 96-3p (Once symptoms are related to a medically determinable impairment the limiting effects of symptoms must be included in determining severity).

Plaintiff next argues that Dr. Frantz is biased because when the Agency requested a psychological evaluation it stated, "ADL's are not psychologically limited". (R. at 412). Because of the Agency's statement, Plaintiff believes that Dr. Frantz was compelled to agree; therefore, his subsequent diagnosis is of dubious credibility. (Id. at 407). While the Court is troubled by the Agency's comment, this does not detract from Dr. Frantz's credibility as a medical source. Dr. Frantz's diagnosis is quite consistent with Dr. Moeller's analysis. Dr. Moeller stated that Plaintiff can make daily living decisions and Dr. Franz stated that Plaintiff has no restrictions on his daily living activities. (Id. at 381, 407). Both Doctors also agreed that Plaintiff had some or mild social difficulties. (Id. at 380, 407); see 20 C.F.R. § 404.1520a(d)(1). Both Doctors stated Plaintiff has mild to no difficulty concentrating. (R. at 381, 407); see 20 C.F.R. § 404.1520a(d)(1). Both Doctors agreed that Plaintiff retains the ability to work. (R. at 382, 396). Dr. Frantz's opinion is credible and the ALJ did not err by relying on it in his decision. (Id. at 25).

Plaintiff finally argues that Dr. Moeller's opinion supports a finding that Plaintiff's mental impairments are severe. The Court disagrees. While Dr. Moeller acknowledged that Plaintiff indeed was mentally impaired, his diagnosis supports a finding of no severity. See *Bowen v. Yuckert*, 482 U.S. 137, 154 n11 (1987) (Claimant must show more than merely the existence of an impairment but that it

---

[2]Asperger's Disorder is a severe and sustained impairment in social interaction and development of restricted repetitive patterns of behavior. Diagnostic and Statistical Manual of Mental Disorders (DSM) IV 80 (4th ed. 2000).

significantly limits mental ability to do basic work activities). Dr. Moeller found that Plaintiff had normal memory and concentration abilities but had major depression and seemed slightly anxious. (R. at 380, 381). Dr. Moeller found that Plaintiff's thought processes were relatively logical and consequential and that his verbal reasoning was adequate. (Id. at 381). Dr. Moeller found that "there are no psychological data present stating Mr. Wilcox could not work at some type of simple unskilled work..." (Id. at 381). When compared with the activities listed in 20 C.F.R.§ 416.921(b), Dr. Moeller's analysis supports the ALJ's step two decision.

Additionally, Dr. Frantz's opinion and the regulations are consistent with the ALJ's step two decision. "If we rate the degree of your limitation in the first three functional areas [activities of daily living; social functioning; and concentration, persistence, or pace] as "none" or "mild"...we will generally conclude that your impairment(s) is not severe...". 20 C.F.R. § 404.1520a(d)(1). Dr. Frantz stated in the Psychiatric Review Technique Form (PRTF) that Plaintiff had mild difficulties in social functioning and in maintaining concentration, persistence and pace. The other categories were marked as having no limitation. (R. at 407). Plaintiff's arguments are unpersuasive as substantial evidence shows that the ALJ carefully evaluated the medical findings as required by S.S.R. 96-3p and 20 C.F.R. § 404.1520a(d)(1).

### V.  Calculation of the RFC

Plaintiff argues that the ALJ erred by failing to include the limitations of Dr. Frantz when calculating the RFC. "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not severe..." 20 C.F.R. § 404.1545(2).

Dr. Frantz stated in the PRTF that Plaintiff had mild difficulties in maintaining social functioning and

mild difficulty maintaining concentration, persistence or pace. (R. at 407). The ALJ specifically mentioned Dr. Frantz's medical conclusions when he found that Plaintiff's mental impairments were not severe. (Id. at 25). Furthermore, the ALJ stated that when calculating the RFC he considered all of Plaintiff's impairments, including those that are not severe. (Id. at 28); 20 C.F.R. § 404.1545(2). When calculating the RFC, the ALJ specifically stated that Plaintiff can only perform simple, repetitive and unskilled work. This is consistent with Dr. Frantz's opinion in the PRTF when he stated that Plaintiff was capable of competitive employment. (Id. at 396). Plaintiff's argument is without merit as the ALJ properly evaluated Plaintiff's RFC under 20 C.F.R. § 404.1545.

### VI..  Questioning of the VE

Plaintiff finally argues that the ALJ erred by failing to specifically ask the VE about Plaintiff's mild difficulties in maintaining social functioning and concentration. A VE's testimony can provide a proper basis for an ALJ's decision when the claimant's impairments have been adequately included in the hypothetical questions. *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

While it is true that the ALJ's hypothetical question omitted any reference to mild difficulties with concentration and social functioning, the ALJ specifically asked the VE to consider only jobs that were slow paced, simple, repetitive, and unskilled. (R. at 566, 567). As discussed earlier, this limitation incorporated the two consulting doctor's opinions regarding Plaintiff's mental condition. Specifically included was Dr. Moeller's opinion that only unskilled and simple work would be appropriate given Plaintiff's mental impairments. (Id. at 381). Additionally, the VE was present during the hearing and heard the Plaintiff specifically describe his mental impairments and limitations. *Gay,* 986 F.2d at 1341. "Thus, because the

ALJ's hypothetical question to the VE expressly included reference to the work-related limitation that results from plaintiff's problems with concentration, persistence and pace [and social functioning], the VE's testimony elicited by those hypothetical questions provided substantial evidence to support the denial of benefits." *Depriest v. Barnhart*, 2004 U.S. Dist. LEXIS 12493 (D. Kan. Jun. 22, 2004).

It is therefore ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security (Doc. 1) be GRANTED and the decision of the Commissioner of Social Security be REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g).

SO ORDERED this 8th day of April 2005.

s/ Wesley E. Brown<br>
Wesley E. Brown, U.S. Senior District Judge